IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| State Farm Fire and Casualty Company, | ) | C/A No. 4:13-cv-2508-RBH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Marshall C. Blanton and Rodney J. Allgire, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **O R D E R** |
| Marshall C. Blanton, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| State Farm Fire and Casualty Company, | ) | |
| | ) | |
| Defendant on Counterclaim, | ) | |
| _____ | ) | |

This matter is before the court on the Motion for Summary Judgment filed by Defendant

Rodney J. Allgire on August 7, 2014 (ECF No. 57) and the Motion to Dismiss or in the alternative for

Judgment on the Pleadings or Summary Judgment filed by State Farm Fire and Casualty Company, the

defendant on the counterclaims, on March 19, 2014 (ECF No. 37).  A hearing was held on March 26,

2015 at 2:00 p.m.[1]  Present at the hearing were Linda Gangi and Robert A. McKenzie on behalf of

Plaintiff, State Farm Fire and Casualty Company ("State Farm")[2]; Joseph Sandefur on behalf of

Defendant Marshall C. Blanton ("Blanton"); and James H. Moss, on behalf of Defendant Rodney J.

Allgire ("Allgire").

_____

[1] The case was reassigned to the undersigned on November 24, 2014.

[2] Ms. Gangi represents State Farm on the declaratory judgment action and Mr. McKenzie represents State Farm on Blanton's counterclaim.

1

Also before the Court are Defendant Allgire's Motion to Lift the Stay (ECF No. 113) and Motion to Amend Answer (ECF No. 120).[3]

State Farm filed this action on September 16, 2013 against Defendants Blanton and Allgire, seeking a declaration from the court regarding whether it had a duty to indemnify and/or a duty to defend Blanton under a homeowner's policy with liability coverage of $1,000,000 issued to Blanton on his home in Horry County. The underlying state court lawsuit, *Rodney J. Allgire v. Marshall C. Blanton*, c/a # 2011-CP-07-4796, involved an altercation between Defendants Blanton and Allgire at a golf course in Beaufort County, South Carolina on November 13, 2011. The underlying lawsuit filed by Allgire alleged two causes of action, one for negligence and recklessness and the other for assault and battery. State Farm defended Blanton under a reservation of rights. After a three day trial, both claims were submitted to the jury. The jury returned a general verdict on January 8, 2014 in the amount of $400,000 actual damages and $100,000 in punitive damages. *See* verdict form filed as an additional attachment to Allgire's motion. (ECF No. 66-1) At the time the motions hearing in the federal case was held, the state court tort case was on appeal. This Court stayed the federal action pending the disposition of the state court appeal. The South Carolina Court of Appeals subsequently affirmed the trial court judgment, and the petition for rehearing was denied. No petition for certiorari was filed, and the case was remitted to the Beaufort County Court of Common Pleas on October 26, 2015. (Def't Allgire's Mot. to Lift Stay, ECF No. 113). The Court now grants the motion to lift the stay of the federal case, with consent of all parties, and will rule on the above referenced motions in this order.

---

[3] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."

### Legal Standard governing motions to dismiss

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While this standard "does not require 'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Rather, to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The United States Supreme Court recently stated that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### Legal Standard for Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure

3

by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Pellegrin v. Berthelsen*, No. 9:11–cv–00125, 2012 WL 10847, at *1 (D.S.C. Jan. 3, 2012) (quoting 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011)). A party "may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery" for the non-moving party. *BET Plant Servs., Inc. v. W.D. Robinson Elec. Co.*, 941 F. Supp. 54, 55 (D.S.C. 1996).

"[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. I.R.S.*, 361 Fed. App'x 527, 529 (4th Cir. 2010); *see also Burbach Broad Co. v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir. 2002). Thus, in order to survive a motion for judgment on the pleadings, the pleadings must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the pleadings, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the non-moving party. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## Legal Standard for Summary Judgment Motions

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). Summary judgment is not "a disfavored procedural shortcut;" rather, it is an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Id*. Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *see also Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, 433 Fed. App'x 207, 213 (4th Cir. 2011) (explaining that under the facts of the case "no reasonable finder of fact would conclude" that judgment for the non-movant was appropriate).

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a

genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The existence of *a mere scintilla* of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### Allgire's Motion for Summary Judgment

In his motion, Allgire contends that he is entitled to summary judgment as a matter of law in the declaratory judgment action[4] on the basis that South Carolina courts do not go behind a general verdict where two or more causes of action are submitted to the jury. He relies on *Armstrong v. Collins*, 366 S.C. 204, 621 S.E. 2d 368, 379 (2005) and *Gold Kist, Inc. v. Citizens and Southern Nat'l Bank of S.C.*, 286 S.C. 272, 333 S.E.2d 67, 73 (Ct. App. 1985) for his argument. "Appellate courts of this state exercise every reasonable presumption in favor of the validity of a general verdict. Specifically, where a jury returns a general verdict in a case involving two or more issues or defenses and its verdict is supported as to at least one issue or defense, the verdict will not be reversed." *Gold Kist*, 333 S.E.2d at 73. Allgire also cites *Owners Insurance Co. v. Clayton*, 364 S.C. 555, 614 S.E.2d 611 (2005), in which the underlying tort action was submitted to the jury on three causes of action: malicious

---

[4] Allgire has filed the depositions of Blanton and Allgire with this Court, and State Farm filed the trial testimony of Blanton. The jury charge and hearing on the motion to intervene were also filed. However, it appears that the complete trial transcript from state court has not been filed with this Court.

6

prosecution, slander, and negligence. The jury returned a general verdict of $1.25 million, of which $500,000 was for compensatory damages and $750,000 for punitive damages. The court found that the employment-related (ERP) exclusion in the insurance policy did not bar coverage for the defamation claim and that therefore the insurer must indemnify the insured for the general verdict. "In addition, since the Clayton jury returned a general verdict, a finding that any of the three claims submitted to that jury is not excluded answers the coverage question." *Id.*, 614 S.E.2d at 614.

Allgire asserts that the evidence at trial would support a verdict for him by the jury on the basis of either one of the claims submitted to it. He also asserts that State Farm concedes that the policy covers negligence; that the evidence supported a verdict on the basis of negligence; that the court cannot look behind the verdict and try to determine the basis for it; and that therefore a duty to indemnify exists. *See* ECF No. 33.[5]

State Farm's counsel indicated at the motion hearing that it does not concede that, if the jury found for Allgire on the basis of negligence, coverage is present. State Farm's position is that, because the jury awarded punitive damages, they at least found wilfulness, wantonness, or recklessness and not simply negligence. State Farm asserts alternatively that the jury awarded punitive damages for the assault and battery claim after finding that the defendant acted in reckless disregard of the plaintiff's rights. State Farm also asserts that the negligence claim should be disregarded because "in the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, the allegation of negligence is surplusage." *State Farm v. Barrett*, 340 S.C. 1, 530 S.E.2d 132, 137 (2000). Also, " [a]lthough South Carolina allows alternative pleading, a party may not invoke

---

[5] Docket Entry No. 33 was a Reply which Allgire filed in response to State Farm's [26] memorandum in opposition to his [23] motion for summary judgment which was withdrawn with leave to refile while the case was assigned to another district judge.

coverage by couching intentional acts in negligence terms." *Id.* (In *Barrett*, the court found that sexual misconduct toward an adult was not an occurrence in a homeowner's policy. It found that any mention of "negligence" within the claims for intentional torts was surplusage.)

### Applicable Policy Provisions in Blanton's State Farm Homeowner's Policy

**SECTION II - LIABILITY COVERAGE**
Coverage L - Personal Liability
If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
1. pay up to our limit of liability for damages for which the **insured** is legally liable; and
2. provide a defense at our expense by counsel of our choice....
**COVERAGE M - MEDICAL PAYMENTS TO OTHERS**
We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:
...
2. to a person off the insured location, if the bodily injury:
b. is caused by the activities of an insured.
**SECTION II - EXCLUSIONS**
1. Coverage L and Coverage M do not apply to:
a. **bodily injury** or **property damage:**
(1) which is either expected or intended by the **insured**; or
(2) which is the result of willful and malicious acts of the **insured;**

The following definitions appear in the policy:
1. "**bodily injury**" means physical injury, sickness or disease to a person. This includes required care, loss of services and death resulting therefrom.
**Bodily injury** does not include...
c. emotional distress, mental anguish, humiliation, mental distress, mental injury or any similar injury unless it arises out of actual physical injury to some person.
7. "**occurrence**" when used in Section II of this policy,

8

means an accident, including exposure to conditions,
which results in:
a. **bodily injury**; or
b. **property damage**;
during the policy period....
(Taken from Amended Complaint, ECF No. 8, emphasis in original)

### Declaratory Judgment Act

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within

its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In *Aetna Casualty*

*& Surety Co. v. Quarles*, the Fourth Circuit found that 28 U.S.C. § 2201 gives district courts the

discretionary authority to grant relief where it "(1) will serve a useful purpose in clarifying and settling

the legal relations in issue, and (2) will terminate and afford relief from uncertainty, insecurity, and

controversy giving rise to the proceeding." 92 F.2d 321, 325 (4th Cir. 1937); *see also Aetna Cas. &*

*Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). Subsequent to the decision in

*Quarles*, the Fourth Circuit has recognized that:

> when an insurer comes to federal court seeking a declaratory judgment on coverage
> issues while the underlying litigation against its insured is pending in the state courts,
> considerations of federalism, efficiency, and comity should also figure into the
> discretionary balance, and may, in certain circumstances, require the federal court to
> refuse to entertain the action, even when the declaratory relief sought would serve a
> useful purpose.

*Nautilus*, 15 F.3d at 376 (citing *Mitcheson v. Harris*, 955 F.2d 235, 237-41 (4th Cir. 1992)). However,

the court in *Nautilus* stated that its decision in *Mitcheson* "did not announce a *per se* rule forbidding

a federal court to entertain a declaratory action brought to resolve issues of insurance coverage during

the pendency of related litigation against the insured in the state courts." *Id.* The court found that

"[s]uch a rule would, of course, be flatly inconsistent with controlling Supreme Court precedent

9

approving the use of declaratory judgment actions by insurers in precisely that situation." *Id.*

Instead, *Mitcheson* found that when a federal court is presented with an insurer's request for declaratory relief on coverage issues while there is pending related state court litigation, its discretion must not only be guided by the factors outlined in *Quarles*, but also by considerations of federalism, efficiency, and comity. *Nautilus*, 15 F.3d at 376. These additional concerns require a court to consider:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law;" and (4) whether the declaratory judgment action is being used merely as a device for "procedural fencing"-- that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

Id. at 377 (internal citations omitted).

"An actual controversy exists between an insurer, on the one hand, and a third party injured by the insured, on the other, when the insurer has initiated a declaratory judgment action against both its insured and the injured third party seeking court determination of its obligations under an insurance policy." *Maryland Cas. Co.v. Pacific Coal & Oil Co*., 312 U.S. 270 (1941). *See also, State Farm and Cas. Co. v. Singleton*, 774 F.Supp.2d 773 (D.S.C. 2009).

In the case at bar, due to the fact that this case was assigned to three different federal judges while it has been pending in this Court, and in light of this Court's order staying the case pending the state court appeal, the federal declaratory judgment action was effectively stayed until after the completion of the state court action. The Court finds that considerations of federalism, efficiency, and comity support this Court exercising jurisdiction over the case, where at this time, the state action is no longer pending. The Court further finds that an actual controversy exists regarding the issues of

coverage and regarding Blanton's counterclaims. The issues before this Court of whether an occurrence was present and whether the exclusions apply are distinct from the issues before the state trial court of whether Blanton assaulted or battered Allgire or engaged in negligent, reckless, wanton, or wilful behavior. *See Penn-America Ins. Co. v. Coffey*, 368 F. 3d 409, 413 (4th Cir. 2004) (In reversing the district court's refusal to exercise federal jurisdiction over an insurance coverage dispute, the Fourth Circuit observed that "the finding of causation necessary to decide whether (victim's) injuries 'resulted from' a physical altercation is distinct in kind from the causation questions that will have to be resolved in deciding whether (victim) recovers on his tort claims.")

**Allgire's Motion to Amend**

Allgire has moved to amend his answer to assert that State Farm's declaratory judgment action is moot based on the jury verdict in state court, barred by the doctrines of *res judicata* and collateral estoppel, that this Court should decline to exercise jurisdiction under abstention principles, waiver by failure to appeal the issue of intervention in state court, the doctrine of the law of the case based upon the state court verdict, and declaratory relief of indemnity.

After reviewing the arguments of counsel regarding the motion to amend, the Court denies Allgire's motion. The deadline contained in this Court's scheduling order for amended pleadings was April 9, 2014. (ECF No. 28) Fed. R. Civ. P. 16(b)(4) provides that a court's scheduling order "may be modified only for good cause and with the judge's consent." After the deadlines set forth in a scheduling order have passed, the good cause standard of Rule 16 must be satisfied instead of the "when justice requires" requirement of Rule 15. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295 (4th Cir. 2008). The "good cause" requirement of Rule 16(b)(4) is unlike the more lenient standard of Rule 15(a) in that it does not focus on the bad faith of the movant or the prejudice to the opposing party but

rather the diligence of the party seeking the amendment. *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997). "Good cause" means that scheduling order deadlines cannot be met despite a party's diligent efforts. *Id.* (Citing 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990)); *see also* Advisory Committee's note to 1983 amendments to Rule 16.

The defenses that Allgire attempts to assert were available to him before the April 9, 2014 deadline for amended pleadings. The mootness defense asserts the two-issue rule, which was contained in Allgire's motion for summary judgment initially filed on January 16, 2014. (ECF No. 23) The defenses of collateral estoppel and res judicata are based upon allegations that the claims asserted by State Farm were fully litigated in the state court action. However, the state court verdict was rendered in January of 2014, three months before the deadline for filing amended pleadings in the scheduling order. Also, even if the motion to amend was timely because the verdict was not final until the appeal ended, as argued by Allgire, the issue preclusion defenses would be futile. The coverage issues were not litigated in the state court action. *See* 17 Couch on Ins. § 239.77 ("A determination in an action between the insured and an injured third party is not res judicata or determinative as to the construction of the policy in the insured's action on the policy to recover the amount of the settlement of insured's liability for damage, where the insurer was not a party and the policy was not involved in the prior suit.") The abstention doctrine was available to Allgire at the time he filed his original answer. The defense of waiver by failure to appeal the state court order denying State Farm's motion to intervene was also available to Allgire long before the deadline for filing amended pleadings in this Court. The state court denied the motion to intervene on August 2, 2013, and any appeal would have been due within thirty (30) days of receipt of written notice of the order. *See* Rule 203(b)(1), SCACR. The "law

12

of the case" defense was presented in the initial motion for summary judgment and therefore was available to Allgire before the scheduling order deadline passed. Finally, the "defense" requesting declaratory relief in Allgire's favor was also available to him before the deadline passed for amended pleadings. Therefore, the Court finds that Allgire has not shown good cause for waiting until December 2015 to move to amend the answer. Allgire's motion to amend the answer is accordingly denied.

### Applicable Insurance Law

In an action for declaratory judgment proceeding under South Carolina law, the duty to defend is based on the allegations of the complaint and the duty to indemnify is based on the evidence found by the factfinder. *Ellett Brothers Inc. v. United States Fidelity & Guaranty Co*., 275 F.3d 384, 388 (4th Cir. 2001). "While the duty to defend exists where there is a possibility of a covered claim, an insurer is obligated to indemnify the insured only for claims that in fact fall within the scope of the coverage provided by the policy." *Jessco, Inc. v. Builders Mutual Ins. Co*., 472 F. App'x. 225, 231 (4th Cir. 2012).

South Carolina law subjects insurance polices "to the general rules of contract construction." *See M & M Corp. of S.C. v. Auto-Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). Although a court must give policy language its plain, ordinary, and popular meaning, the terms of an insurance policy must be construed most liberally in favor of the insured. *M & M Corp.*, 390 S.C. at 259, 701 S.E.2d at 35; *B.L.G. Enter., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999); *Rhame v. Nat'l Grange Mut. Ins. Co.*, 238 S.C. 539, 544, 121 S.E.2d 94, 96 (1961). Where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. *Id*.

It is the insured's burden to establish that a claim falls within the coverage of an insurance

contract. *Jensen v. Selective Ins. Co. of Se.*, No. 4:12–cv–02133–RBH, 2013 WL 3148341, at \*2 (D.S.C. June 19, 2013) (citing *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 102 160 S.E.2d 523, 525 (1968)). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage and the exclusion is construed "most strongly" against the insurer. *Id.* (citing *Boggs v. Aetna Cas. & Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565, 568 (1979)). However, an insured party bears the burden of proving an exception to an exclusion. *Ross Development Corp. v. PCS Nitrogen Inc.*, Nos. 12–2059, 12–2454, 2013 WL 2440844, at \*3 (4th Cir. June 6, 2013) (citing *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 594 S.E.2d 455, 460 n.5 (2004)).

### Analysis

Although the two-issue rule is well settled law in South Carolina, it is not determinative of the coverage issues presented in the declaratory judgment action.  The two-issue rule simply requires an appellate court to affirm a general verdict if the evidence supports a verdict on any of the claims submitted to the jury.  *See Armstrong*  and *Gold Kist*.

In the coverage context, under *Clayton*, if the court in the declaratory judgment action finds that the exclusions asserted by the insurer do not apply to one of the claims submitted to the jury, and a general verdict is rendered, the insurance company has the duty to indemnify the insured.  In the case at bar, two claims were submitted to the jury: negligence/recklessness and assault and battery.  The jury returned a general verdict in favor of Allgire and awarded $400,000 actual damages and $100,000 punitive damages.  The general verdict does not indicate whether the jury found for Allgire on the basis of assault and battery or negligence and wilfulness, wantonness, or recklessness.  Therefore, the Court denies Allgire's motion for summary judgment on the basis of the two-issue rule and the general verdict.

14

This Court's reasoning is supported by *Board of County Supervisors of Prince William County, Va. v. Scottish & York Ins. Services, Inc.*, 763 F.2d 176 (4th Cir. 1985), a declaratory judgment action for determination of coverage under a liability policy. Before the federal action was brought, inmates of the Prince William County jail had obtained a judgment against the County for unconstitutional prison conditions. Judgment was returned against the County on a general verdict. The judge had instructed the jury that it could find liability on any or all of six theories of liability, three of which included bodily injury. When the county demanded that the insurance company pay the verdict, the company denied coverage on the basis that it had insured the county only for liability for bodily injury and personal injury and that the verdict was based on neither. The district court granted the county's motion for summary judgment on grounds that "there is no way to determine from the verdict that at least part of the award wasn't based upon those three elements" of bodily harm. The Fourth Circuit reversed, finding that "it is not possible to determine from the general verdict the theories upon which the jury based liability or damages". *Id*. at 176. The Fourth Circuit remanded the case to the district court for "a determination of whether the insurance policy covers the incurred liability under its personal injury clause." *Id*. at 177. The court stated:

> The problem presented both to the district court and to this court on appeal is the impossibility of winnowing out the specific grounds upon which the jury based its general verdict where it was instructed that it could base liability on any one or more of six different theories. Although we have not previously faced this issue in an insurance coverage context, in *C.B. Marchant Co., Inc. v. Eastern Foods, Inc.*, 756 F.2d 317 (4th Cir. 1985), we considered the collateral estoppel effect of a prior judgment rendered on a general verdict where alternative bases of liability had been submitted to the jury . . . We held that because it was not possible to determine on which theory the jury rendered its verdict, the issue was not precluded from trial in a subsequent case . . . We cannot distill special findings from a general verdict and to do so would intrude on the independent role of a jury as much as would a court's unilateral amendment of its verdict.

*Id*. at 179.

Allgire also asserts in his briefing that an occurrence is present under the policy and that the two exclusions asserted by State Farm do not apply as a matter of law. The Court will address these issues in turn.

**Occurrence**. Allgire contends that the policy provides coverage for bodily injuries caused by an "occurrence" and that an "occurrence" is defined as an accident. The policy does not define "accident." He asserts that, when undefined in a general liability policy, the term "accident" means "an unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Walde v. Association Insurance Co*., 401 S.C. 431, 737 S.E.2d 631, 638 (Ct. App. 2012) (*definition of accident from point of view of victim*). He contends that the incident was an "accident" under the policy because Allgire neither "intended nor designed" to be hurt. State Farm agrees that the policy does not define the term "accident" and that the definition provided by case law applies ("an unexpected happening or event which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt") However, it contends that, here, Allgire attempted to invoke coverage by couching intentional acts in negligence terms. State Farm cites *Manufacturers and Merchants Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 498 S.E.2d 222 (1998). That case held that the effect of sexual abuse is so integral to the act that the intent to do the act is interchangeable with the intent to cause the resulting injury. In other words, the act is so "inherently injurious that it cannot be performed without causing the resulting injury." (Citing *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H.521, 517 A.2d 800, 802 (1986)) Therefore, State Farm asserts that no occurrence was present.

In addition to the definition from case law for "accident" cited by the parties above, which is from the victim's perspective, South Carolina case law also defines "accident" as "an effect which the

16

actor did not intend to produce and cannot be charged with the design of producing." *Goethe v. New York Life Ins Co.*, 183 S.C. 199, 190 S.E.451 (S.C. 1937) (*definition from point of view of actor*).

Here, it is not clear from the jury verdict whether the underlying incident occurred by chance (*from the point of view of the victim*). Also, the jury verdict is not conclusive as to Blanton's intent (*from the point of view of the actor*). Therefore, using either definition provided by case law, the court finds that factual issues exist regarding whether an occurrence was present under the policy and denies Allgire's motion for summary judgment as to whether there was an occurrence.

**Exclusions**. Even if an occurrence was found to be present, State Farm relies on two exclusions contained in the policy. Those exclusions as quoted above exclude bodily injury or property damage: (1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured.

At the hearing, State Farm focused on the exclusion for bodily injury resulting from willful and malicious acts of the insured. In order for this exclusion to apply, the insured must have acted <u>both</u> willfully and maliciously. "Intent is not an essential element of assault and battery." *Mellen v. Lane*, 377 S.C. 261, 659 S.E.2d 236, 245 (Ct. App. 2008). Therefore, if the verdict was based on the assault and battery cause of action, the jury did not necessarily find that a wilful and malicious act caused the injuries and this exclusion may not apply. If the verdict was based on negligence, then the court would need to assume a finding of recklessness, wantonness, <u>or</u> *wilfulness* to support the punitive damages award. The state court judge charged the jury as follows regarding punitive damages:

> Punitive damages are allowed in the interest of society in the nature of punishment and serve at least three important purposes: Punishment of the Defendant's reckless, willful, wanton or malicious conduct; deterrents of similar future conduct by the Defendant or others, and compensation for the reckless or willful invasion of the Plantiff's private life . . . [P]unitive damages can only be awarded, again, when the Plaintiff proves by clear and convincing evidence that the Defendant's actions were willful, wanton or reckless

17

> . . . [T]he Plaintiff cannot recover punitive damages based on mere negligent conduct. Again, negligence is the failure to use due care or is carelessness. Recklessness and wantonness, ladies and gentlemen, is a higher degree of culpability or responsibility. Recklessness is a conscious indifference to the right of a plaintiff or a reckless disregard of the rights of a Plaintiff.

(ECF No. 57-2, p. 16)

This is consistent with the South Carolina statute regarding punitive damage awards, which indicates that punitive damages "may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's wilful, wanton or reckless conduct." S.C. Code Ann. § 15-32-520 (2014 Supp.)

However, the Court cannot find that the exclusion for wilful and malicious acts does not apply as a matter of law because, in reaching its verdict, the jury could have found no intent at all or that Blanton acted wilfully but not necessarily maliciously. Questions of fact exist regarding the applicability of this exclusion.

As to the exclusion for bodily injury expected or intended by the insured, the analysis set forth by the South Carolina Supreme Court in *Miller v. Fidelity-Phoenix Ins. Co.*, 268 S.C. 72, 231 S.E.2d 701 (1977)[6] and reaffirmed in *Vermont Mut. Ins. Co. v. Singleton*[7], 316 S.C. 5, 446 S.E.2d 417 (1994), applies.[8] That analysis is as follows:

> Apparently different courts have adopted varying constructions of the intentional act exclusion. Of the varying views, I am persuaded that the better rule is to the effect that *not only the act causing the loss must have been intentional but that the results of the*

---

[6] In *Miller*, the policy excluded property damage "caused intentionally by or at the direction of the insured."

[7] In *Singleton*, the policy excluded bodily injury "which is expected or intended by the insured."

[8] The South Carolina Supreme Court in *Singleton* distinguished *Snakenberg v. Hartford Cas. Ins. Co*, 299 S.C. 164, 383 S.E.2d 2 (Ct. App. 1989), a case relied upon by State Farm herein. The court found that in *Snakenberg* the Court of Appeals focused on whether the tort of invasion of privacy (which could be premised either on negligence or an intentional act) was an intentional act and did not address the intended harm or the results of the act.

> *act must also have been intended.* Thus, under this rule, the insured must be shown not only to have intentionally acted in setting the fire but must also have intended that the fire cause the type of loss or injury which resulted to the plaintiff.

*Miller*, 231 S.E.2d at 702 (emphasis added). A two-prong analysis is required. "The first is whether the act causing the loss was intentional, and the second is whether the results of the act were intended." *Singleton*, 446 S.E. 2d at 419.

Several United States District Judges in the South Carolina district have addressed South Carolina case law regarding the intentional act exclusion. For example, in *Allstate Ins. Co. v. Biggerstaff*, 703 F. Supp. 23 (D.S.C. 1989), Judge Blatt addressed cross motions for summary judgment in a declaratory judgment action concerning coverage under an Allstate homeowners policy. The underlying lawsuit alleged that the insured, Biggerstaff, conspired and joined with others in committing assault, trespass, and intentional infliction of emotional distress, allegedly resulting in denial of the injured party's constitutional rights. Judge Blatt applied *Miller* as holding that "the damages resulting from the actions, and not merely the actions themselves, must be intentional." *Id.* at 24. Judge Blatt denied the motion for summary judgment on Allstate's duty to indemnify "as there exist material issues of fact concerning Cadet Biggerstaff's state of mind at the time the acts complained of were committed." *Id.* at 25.

In *Dunes West Residential Gold Properties, Inc. v. Essex Ins. Co*., No. CIVA 2:05CV 01354DCN, 2006 WL 1806009 ( D.S.C. June 29, 2006), Essex moved for summary judgment regarding a expected or intended injury exclusion. United States District Judge Norton construed *Vermont* as requiring a two-prong test for an intentional act exclusion as follows and found a disputed issue of fact:

> The *Vermont* court concluded that the insured intended to strike the third party; as such, surely any damage from that act was to be expected. But the Supreme Court did not focus on expected damage. Rather, the court requires the resulting damage to be intentional. However logical in the present circumstance, excluding coverage for mere

"expected" damage is inconsistent with *Vermont*.

*Essex*, 2006 WL 1806009 at * 2.

Judge Norton found that the case presented disputed issues of fact concerning the exclusion.

South Carolina's interpretation of the "expected and intended" exclusion puts it within the minority of jurisdictions. 3 Law and Prac. of Ins. Coverage Litig. § 34:8. The exclusion "requires a comparison of the nature of the injuries inflicted with the intentions and expectations of the defendant as shown by the defendant's expressions of intent and the surrounding facts." *Id*., citing *Hawthorn v. City of Bossier City*, 697 So. 2d 680, 684 (La. Ct. App. 2d Cir. 1997). Some insurance companies have revised their policies to exclude, not only injuries expected or intended by the insured, but also injuries resulting from intentional acts with expected or unexpected results. *See South Carolina Farm Bureau Mut. Ins. Co. v. Dawsey*, 371 S.C. 353, 638 S.E.2d 103 (2006); *Amica Mut. Ins. Co. v. Edwards*, No. 8:10-cv-1143-GRA, 2011 WL 2971935 (D.S.C. July 20, 2011). The policy now before the Court had apparently not been revised in this manner and used "expected or intended" injury as its language.

Here, Blanton testified that he hit Allgire. As in *Singleton*, "even if it was in self defense, the act of hitting (the victim) was intentional. Thus, the first prong is satisfied here." *Id*. at 419. Applying the second prong, *whether the results of the act were intended*, is a more difficult question. The jury in the underlying case apparently did not find that Blanton hit Allgire in self defense. They found for Allgire and awarded a sizable amount of damages. However, it is unclear whether Blanton intended that the hit would cause the type of injury suffered by Allgire. Therefore, factual issues are present as to whether the bodily injury was expected or intended by the insured. This conclusion is actually supported by the Maryland case cited by Allgire in his supplemental brief. In *Allstate Ins. Co. v. Atwood*, 572 A.2d 154 (Md. Ct. App. 1990), the plaintiff in a tort lawsuit alleged that the insured caused

20

serious injury to his face. The case was submitted to the jury on negligence and battery. The jury specifically found for the plaintiff on the negligence claim. The homeowner's insurance company filed a declaratory judgment action to determine the applicability of an exclusion for "bodily injury . . . intentionally caused by an insured person." The court held that the insurer would be bound by the finding by the jury on the "intentional/negligence issue if, but only if, that issue was fairly litigated in the tort trial." *Id*. at 261. While the Maryland court referred to the possibility that the parties to the tort action may have colluded to obtain a verdict that would create coverage, the language of the case would also apply to the situation in the case at bar, where it would appear that neither fraud nor collusion is present, but the issues pertaining to the exclusion have not been fully and fairly litigated.

Addressing the argument of State Farm that the plaintiff attempted to cloak intentional acts as negligence in order to obtain coverage, the state court judge in the underlying tort case found sufficient evidence to charge the jury on negligence as well as self defense. Therefore, this court does not find that the acts by Blanton were intentional acts cloaked in negligence terms. However, the Court does not believe that the issues presented in the declaratory judgment action were fully and fairly litigated in the state court. If the jury verdict was based solely on negligence, and the jury had not awarded punitive damages, this Court would possibly have been able to find that Blanton did not expect or intend bodily injury as a matter of law. However, the jury <u>did</u> award Allgire punitive damages, thus finding either wilful, wanton, or reckless behavior by Blanton.[9] It is not clear which one. Nevertheless, the award of punitive damages does not answer the question of whether the second prong of the test for the intentional act exclusion was met, that is, whether Blanton intended to cause the type of injury

---

[9] Allgire argues that State Farm has waived its rights to litigate these issues because it did not appeal from the ruling in state court denying State Farm's motion to intervene to submit special interrogatories to the jury after the verdict was rendered. The Court disagrees. Any intervention would have been permissive and thus any appeal would have likely been unsuccessful. Also, it is common practice for liability carriers to bring declaratory judgment actions to determine coverage.

which resulted.  Therefore, the motion for summary judgment by Allgire is denied.[10]  **The Court will schedule a bench trial to determine the factual issues in State Farm's declaratory judgment action in early 2016** and make factual and legal findings regarding whether an occurrence was present and whether the exclusions apply, namely, whether Allgire's bodily injury was expected or intended by Blanton; and whether Blanton's actions were wilful and malicious.

**Counterclaim by Blanton for Breach of Contract and Bad Faith against State Farm**

Blanton has filed counterclaims for breach of contract and bad faith against State Farm.  (ECF No. 31) The allegations regarding both counterclaims are essentially the same.  Blanton alleges:

a. Plaintiff refused and continues to refuse to give reasonable interpretations to the provisions in the policy of insurance, or any reasonable application of such provisions to Defendant Allgire's claim against Defendant Blanton and has acted to protect its own financial interest therein at the expense of Defendant Blanton's rights;

b. Plaintiff has continually attempted to find ways to not provide coverage to Defendant Blanton for claims brought by Defendant Allgire at the expense of Defendant Blanton's rights;

c. Plaintiff filed a Declaratory Judgment Action requesting the Federal Court to decide issues of fact at issue in the action brought by Defendant Allgire against Defendant Blanton directly against the interests of Defendant Blanton;

d. Plaintiff's refusal to process the claim in good faith and fair dealings has compelled Defendant Blanton to engage legal counsel to defend himself in a Declaratory Judgment Action and initiate litigation to recover such benefits;

e. Plaintiff has assumed Defendant Allgire's claim that he has been damaged in excess of Seventy-Five Thousand and 00/100 ( $75,000.00) Dollars by Defendant Blanton as grounds for bringing a Declaratory Judgment Action pursuant to 28 U.S.C. §1332 directly against the interests of Defendant Blanton;

f. Plaintiff failed to advise Defendant Blanton the need for an allocated verdict;

---

[10] State Farm has not moved for summary judgment in the DJ action. A suggestion was made by counsel for State Farm that the Court should grant summary judgment in its favor pursuant to Fed. R. Civ. P. 56(f).  However, in the absence of any motion for summary judgment filed by State Farm, the Court declines to use the procedure outlined in Rule 56(f) at this late stage.

g. Plaintiff failed to provide full notice to Defendant Blanton of the divergence of interests between the parties and the possible consequences of a general verdict for damages;

h. Plaintiff unreasonably refused to settle the underlying liability claim within the limits of the insurance policy at issue;

i. Plaintiff unreasonably refused to engage in meaningful settlement negotiations in the underlying liability action;

j. Plaintiff has refused to indemnify Defendant Blanton for the general verdict rendered in the liability action; and

k.  Such other failures to be proven at trial.

State Farm has moved in the alternative to dismiss the counterclaims pursuant to Fed. R. Civ. P.  12(b)(6) or 12(c) or to grant summary judgment pursuant to Rule 56.

The elements of a cause of action in South Carolina for breach of contract are (1) the existence of a contract, (2) its breach, and (3) damages caused by the breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 124 S.E.2d 602, 610 (1962).

The elements of a cause of action in South Carolina for a cause of action by an insured against his insurance company for bad faith refusal to pay benefits due under an insurance contract  are: (1) the existence of a mutually binding contract of insurance; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, , 359-60, 415 S.E.2d 393, 396-97 (1992).

State Farm asserts that the "heart of Defendant Blanton's counterclaim" lies in his assertion that the filing of the declaratory judgment action constitutes breach of contract and bad faith. *See* ECF No. 37-1, p. 3.  Although no courts within the State of South Carolina or the Fourth Circuit have weighed in on this particular issue, state and federal jurisdictions throughout the country have repeatedly held

that the filing of a declaratory judgment, by itself, does not constitute an act of bad faith on the part of the insurer. *See Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 689 (9th Cir.1993) ("The fact that Zurich brought a declaratory judgment action to determine its liability for coverage is not bad faith."); *Aetna Cas. and Sur. Co. v. Ericksen*, 903 F.Supp. 836, 841 (M.D.Pa. 1995) ("We conclude that there has been no bad faith on the part of Aetna either in refusing to defend and indemnify in the state court action, or in bringing the instant declaratory judgment action."); *International Surplus Lines Inc. v. University of Wyoming Research Corp.*, 850 F. Supp. 1509, 1527 (D.Wyo. 1994) ("Absent a showing by the defendants that the plaintiff filed this [declaratory judgment] suit for an improper or illegitimate purpose, a showing that has not been made in this case, it is clear that the mere fact of filing suit, standing alone, is not evidence of bad faith."). While the simple filing of a declaratory judgment action normally may not constitute breach of contract or bad faith, the complete factual basis for these claims is unclear and it is also unclear whether any improper purpose was involved. State Farm's motion to dismiss or for judgment on the pleadings is denied as to the filing of the declaratory judgment action.

Blanton asserts that State Farm failed to inform him of the "dangers of a general verdict." This has no merit under the record in the case. In fact, this argument is somewhat contrived in that Blanton is relying on the general verdict in attempting to defeat the declaratory judgment action. More importantly, Blanton (through his attorney retained by State Farm to defend him, Griffith, and his own privately retained attorney, Calamari) opposed State Farm's attempted intervention in the underlying action to submit special interrogatories to the jury whose answers could have precluded the necessity for filing the instant action. Blanton cannot have it both ways. He cannot "have his cake and eat it, too". State Farm's motion for summary judgment is granted as to the alleged failure of State Farm to advise Blanton about the dangers of a general verdict.

24

Blanton also alleges that conduct by State Farm during the processing of the claim constitutes bad faith. In *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996), the South Carolina Supreme Court answered a certified question from this Court and recognized a cause of action "for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims." *Id.*, 473 S.E.2d at 55. The court also "declined to make breach of an express contractual provision a prerequisite to bringing the action." *Id.* The duty of good faith and fair dealing encompasses "the performance of *all* obligations undertaken by the insurer for the insured." *Carolina Bank & Trust Co. v. St. Paul Fire and Marine Co.*, 279 S.C. 576, 310 S.E.2d 163, 165 (Ct. App. 1983), cited with approval by *Tadlock*, 473 S.E.2d at 53. South Carolina courts have held that "the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 349 S.C. 394, 562 S.E.2d 659, 662 (Ct. App. 2002), citing *Tadlock*, 473 S.E.2d at 53. *See also*, *Ocean Winds Council of Co-Owner, Inc., v. Auto-Owners Ins. Co.*, 241 F. Supp.2d 572 (D.S.C. 2002). In *Ocean Winds*, the plaintiff submitted the deposition testimony of an expert witness who stated that the insurance company "(1) failed to provide a copy of the reservation of rights letter to the insured; (2) failed to provide a proof of loss form to the insured as required by its claims handling guidelines manual; (3) failed to respond to correspondence from the insured attorney; and (4) failed to deny the claim or give any reasons for denying the claim." 241 F. Supp. 2d at 576-77. United States District Judge Norton followed South Carolina case law in holding that a bad faith action is not precluded by a finding that the insurer did not breach the insurance contract because the contract did not provide coverage.

After the hearing in this matter had been scheduled and the briefing on the motions scheduled

to be heard had concluded, Blanton filed an expert report from Maurice R. Kraut, CPCU (ECF No. 103-1) dated May 5, 2014.  All counsel indicated at the hearing that they had no objection to the Court considering the expert's report.  The expert opined in his report that State Farm failed to properly investigate the claim, failed to adjust the claim in accordance with industry standards, failed to adjust the claim in accordance with State Farm's internal standards, and unreasonably failed "to pay benefits (negotiate a resolution) under the policy."  *Id*. at 4.

State Farm responded to the opinion of Mr. Kraut as follows: The report does not indicate that he reviewed the trial transcript, which indicated that Blanton intended to hit Allgire and that he was not apologetic for his actions.  Also, State Farm asserts that, had it taken statements from Blanton, these could have been discovered in the tort suit and in the criminal proceedings.  In addition, State Farm asserts that it participated in two mediations of the state tort suit and one mediation of the declaratory judgment case.  It further asserts that it assigned defense counsel under a reservation of rights as to coverage and fully monitored the tort trial proceedings.  *See* Pl. Supp. Reply to Def't's Supp. Response, ECF No. 104.

In order to withstand a motion to dismiss for failure to state a claim or for judgment on the pleadings, a cause of action must contain sufficient factual allegations which, when accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  This rule requires each pleaded cause of action to contain sufficient factual allegations that satisfy each element of the cause of action, as opposed to pleading facts that are merely consistent with liability. *Id*.  The Court has reviewed Blanton's counterclaims for breach of contract and bad faith and finds that they state a claim.  Thus, the Court denies State Farm's motion to dismiss the counterclaims or in the alternative for judgment on the pleadings.  The motion for summary judgment is granted as to the

26

alleged duty of State Farm to advise Blanton about the dangers of a general verdict. Otherwise, the motion for summary judgment is denied without prejudice to the right of State Farm to file a second motion for summary judgment if appropriate after the limited discovery period[11] set forth below. The Court establishes the following deadlines for the counterclaims:

1. Discovery shall be completed by **February 19, 2016**. All discovery requests shall be served in time for the responses thereto to be served by this date. De bene esse depositions must be completed by the discovery deadline. No motions related to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Civil Rule 7.02, an dhave had a telephone conference with Judge Harwell in an attempt to resolve the matter informally.

2. All dispositive motions, Daubert motions, and all other motions, except those to complete discovery, those nonwaivable motions made pursuant to Fed. R. Civ. P. 12, and those relating to the admissibility of evidence at trial (other than Daubert motions), shall be filed on or before **March 7, 2016**. *See* below for motions in limine deadline.

3. No later than **May 31, 2016** the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures. Within fourteen days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to the use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(6).

4. Motions in limine must be filed at least three weeks prior to **June 16, 2016**. Responses to motions in limine shall be filed within seven (7) days after the motion is filed.

5. Parties shall furnish the Court pretrial briefs seven (7) days prior to the date set for jury selection. Attorneys shall meet at least seven (7) days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits.

6. This case is subject to being called for jury selection and/or trial on or after **June 16, 2016**.

### Conclusion

**IT IS THEREFORE ORDERED** that Allgire's Motion for Summary Judgment [ECF No. 57] is **DENIED**. **IT IS FURTHER ORDERED** that State Farm's Motion to Dismiss or for Judgment on

---

[11] Blanton requested the Court to allow discovery regarding the counterclaims in its response to Allgire's motion to stay. (ECF No. 117) State Farm indicated at the motions hearing in this Court that discovery is needed regarding the counterclaims.

the Pleadings on the counterclaims is **DENIED**.  State Farm's Motion for Summary Judgment (ECF No. 37) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**, as explained herein.  Defendant Allgire's Motion to Lift Stay (ECF No. 113) is **GRANTED**.  Defendant Allgire's Motion to Amend Answer (ECF No.  120) is **DENIED**.

      **IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
December 17, 2015